```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF MISSOURI

UNITED STATES OF AMERICA,

          Plaintiff,

     vs.                 Cause No. 4:15CR0039 RLW/TCM

ANTONIO WASHINGTON,

          Defendant.
========================================================
              TRANSCRIPT OF BOND HEARING

     BEFORE THE HONORABLE THOMAS C. MUMMERT, III
             UNITED STATES MAGISTRATE JUDGE

                     APRIL 28, 2015
========================================================

                       APPEARANCES

For Plaintiff:

Mr. Thomas S. Rea
OFFICE OF U.S. ATTORNEY
111 S. Tenth Street
20th Floor
St. Louis, MO 63102


For Defendant:

Ms. Carter Collins Law
LAW AND SCHRIENER, LLC
141 N. Meramec Avenue
Suite 314
St. Louis, MO 63105

                      Transcribed by:

     Alison M. Garagnani, CCR #475, CSR, RMR, CRR
                  Official Court Reporter
                United States District Court
                555 Independence, Room 3100
                  Cape Girardeau, MO 63703
                       (573)331-8832

      Proceedings Recorded by Electronic Recording
```

1

1                (THE PROCEEDINGS BEGAN AT 9:31 A.M.)
2           (THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN
3    COURT AND WITH THE DEFENDANT PRESENT:)
4                THE COURT:  We're going to start
5    with Mr. Washington's motion to reconsider
6    detention.  Ms. Law filed a motion to reconsider
7    the Court's previous order on ordering the
8    Defendant be detained and asked for a hearing,
9    and here we are.
10               MS. LAW:  Thank you, Judge.  And,
11   you know, I have to tell you, Judge, I spoke to
12   Mr. Rea about setting it for a hearing, and I
13   have to say I -- and, of course, as the Court
14   knows, I filed a relatively lengthy and supported
15   motion to reconsider.
16               And I also have, Judge, some extra
17   exhibits for that, if I may.  One of them,
18   Exhibit D, is Mr. Washington's discharge papers
19   from the Air National Guard.  And there is also a
20   letter which is Exhibit E from Raquel Jones who
21   is a young lady that he lives with and with whom
22   he has their only child.  She's written really a
23   very, very touching letter.
24               And also Exhibit F is a letter from
25   Marvin Washington, who is Mr. Washington's

```
1   father.  And Mr. Marvin Washington is the vice
2   president of contract services at MERS and thinks
3   that, therefore, he could probably help get
4   employment.  If I may, Judge.
5            THE COURT:  Okay.  Any objection to
6   those exhibits?
7            MR. REA:  No, Your Honor.  And I
8   have received a copy this morning.
9            THE COURT:  Good.  The Court will
10  admit those exhibits.  Thank you.
11           MS. LAW:  So, Judge, I mean, that
12  takes us to our -- the issues -- some of the
13  issues that the Court had before it I think have
14  been resolved.  They are as far as I know.  For
15  example, the outstanding warrants.  This is a
16  young man who I think could be employed
17  gainfully.
18           His family -- and I know that the
19  record is fine, Judge.  Obviously, you can see --
20           THE COURT:  Yeah.  I do see some
21  folks in support.  It looks like at least five or
22  six people back there.  The Court appreciates
23  that.
24           MS. LAW:  Yes.  And I know that
25  Ms. Oliver is here.  And I don't know if I
```

1  recognize him, but I don't know if this is Marvin
2  Washington.
3          AUDIENCE MEMBER: Yes, it is.
4          MS. LAW: And I think probably
5  Raquel Jones is here, and I think his sister.
6  But those are all Mr. Washington's family
7  members.
8          THE COURT: Right. Thank you.
9          MS. LAW: And I can say to you,
10 Judge, that those folks have been supportive
11 throughout this and have been helpful getting me
12 anything that I need from them. And so I think
13 that Mr. Washington will have a place to stay.
14 And any conditions the Court would want to or see
15 fit to put on him such as home confinement, etc,
16 they are certainly perfectly willing to submit
17 to, so --
18         THE COURT: Okay. Thank you.
19         Anything from the Government?
20         MR. REA: Yes, Your Honor. If I can
21 take a few moments to make a record in this
22 regard. Obviously, we're here because the Court
23 entered an order detaining Mr. Washington.
24 Mr. Washington has asked the Court to reconsider
25 it.

```
 1                  As I stand here it appears to me
 2   that the only thing that has changed is the
 3   status of some of the outstanding warrants that
 4   were in existence at the first time the Court
 5   addressed this issue.  In terms of everything
 6   else that's been raised I think that was all
 7   information the Court had before it at the time
 8   it ordered Mr. Washington detained.
 9                  But because Mr. Washington has made
10   a record and filed things in support I want the
11   United States to have the opportunity to also
12   submit some other things to the Court.  Let me
13   submit what's been marked as Exhibit 1A, 1B and
14   1C.
15                  And, Your Honor, what I'm submitting
16   to the Court and I provided a copy to
17   Mr. Washington and his counsel is information
18   about the underlying case that gives rise here,
19   and that goes to the nature and circumstances of
20   the offense charged, something that the Court has
21   to take into consideration.
22                  Let me also provide for the Court
23   what's been marked as Exhibit 1D.  1D is a
24   transcript of Mr. Washington's plea of guilty in
25   the state court in January 2015 that arises from
```

1  the same facts and circumstances, and I'll get
2  into that in a moment.
3              And the last thing I want to submit
4  to the Court is what has been marked as
5  Exhibit 2.  These all start with W just to
6  indicate that it is for Mr. Washington.  But
7  Exhibit 2, that is, I believe, a 2012 police
8  report, which I'll talk about, but, again, it
9  goes to Mr. Washington's conduct when in
10 possession of firearms.
11             And, Judge, just to put this into
12 context, when we talk about the nature and
13 circumstances of the offense.  This was a
14 domestic dispute between Mr. Washington and his
15 girlfriend.  A firearm was displayed, and there
16 was a physical altercation where Mr. Washington
17 put his hands on a female.  The police responded.
18             In connection with them responding
19 they give consent to search the house.  And
20 inside that house in an unlocked safe is where
21 there's over 400 grams of heroin and 12 firearms.
22 And you've got pictures of the heroin and the
23 firearms there.
24             The reason I bring that up is
25 obviously the nature and circumstances matter,

1  but, as I think the Court can appreciate, you
2  don't go to over 400 grams of raw heroin and 12
3  firearms on day one.  I mean, there is -- there's
4  got to be some sort of graduation to get you to
5  that point, so I think that's important for the
6  Court to take note of.
7           Secondly, when it talks about the
8  state proceeding, Your Honor, Mr. Washington was
9  charged with the assault -- the domestic
10 aspect -- and the heroin only.  And I suggest to
11 the Court that it was the heroin only because
12 there wasn't a corresponding state level charge
13 for the firearms.  He's not -- he doesn't have a
14 felony conviction.
15          THE COURT:  I'm not sure that
16 matters anymore in the State of Missouri.
17          MR. REA:  Understood.
18          THE COURT:  But, yeah, I got that.
19          MR. REA:  But when you look at the
20 guilty plea, what you see there, Judge, is you
21 see a guilty plea to the domestic aspect and the
22 heroin, and we have the heroin in the same safe
23 right next to the firearms.  So when the Court is
24 considering the weight of the evidence against
25 the person, I understand there's a presumption of

1  innocence, but I think this is a unique case.
2              THE COURT: Yeah, it is.
3              MR. REA: And so when the Court
4  takes that into consideration, I mean, we're kind
5  of in a different ballpark here. I understand
6  nine and a half times out of ten an individual
7  appears before this Court they're presumed
8  innocent, and that's the starting point. And I'm
9  just suggesting to the Court that I think it's
10 different when you have --
11             THE COURT: A guilty plea already,
12 yeah.
13             MR. REA: -- a guilty plea for the
14 same underlying conduct. And the other thing I
15 mention is this, and this ties into where we are
16 here. The underlying circumstances and the
17 danger to the community I think is exemplified by
18 Mr. Washington's conduct.
19             When we were first here,
20 Mr. Washington's counsel mentioned a meeting that
21 Mr. Washington had with the United States. I
22 don't want to get into that in too much depth,
23 but I do want to point this out. We explained to
24 Mr. Washington, among other things, that he's
25 only being charged with the firearms here as a

 1   courtesy.  He was charged with the drugs in the
 2   State.  We weren't going to do that over here.
 3   So that was one of the issues that came up.  And
 4   his response at that time -- and Ms. Law can
 5   correct me if she disagrees -- was I just want to
 6   start serving my time.  Fair enough.  And that's
 7   what has happened here.  He went in -- and I know
 8   that's not binding.  But the reason I raise it is
 9   this:  Risk of flight is something that this
10   Court also has to consider.
11              He has been detained for the first
12   time I would suggest substantially in his life,
13   and I don't think he likes it.  I don't blame
14   him.  I get that.  But when you look at the
15   conduct in this case and it gives to rise to a
16   mandatory minimum sentence, he's facing
17   sentencing at the state level as well for the
18   other conduct that's not included in the federal
19   case I think risk of -- and if you look at all
20   the things on paper, which are frankly a positive
21   for him I think there is a basis there that risk
22   of flight is a concern whether it be by his
23   financial wherewithal, his ability to do that if
24   that's something he wanted to, because obviously
25   he's not happy with the situation that he's in.

1              The last two things I want to
2    mention is this:  I submitted a 2012 police
3    report.  That's another situation where
4    Mr. Washington was in the possession of a
5    firearm.  He was with another individual.  There
6    was a dispute between Mr. Washington and his
7    associate and two other individuals.
8              During the course of that dispute,
9    one of the two other individuals is handcuffed by
10   Mr. Washington, his associate, and held at
11   gunpoint in a backyard.  The second individual
12   comes around in a truck, and there's shots fired
13   at the other individual, and then the police
14   respond, and it's a mess, and guns are recovered.
15             So his personal characteristics I
16   understand on paper they look very -- they look
17   favorable in terms of release.  And I understand
18   he has support, but what's been presented to the
19   Court in these letters and on paper is in stark
20   contrast to just the hard evidence that has been
21   presented on the other side of the coin, and it's
22   evidence that he's pled guilty to.
23             The last thing I want to mention is
24   there's a rebuttal of presumption here.  I don't
25   like to start with that, but I feel compelled to

1  end with it.  And I don't think based upon the
2  record before the Court that that presumption
3  has, in fact, been rebutted, and so we would ask
4  the Court to maintain its order of detention and
5  keep Mr. Washington detained pending resolution
6  of this case.  Thank you, Your Honor.
7              THE COURT:  Thank you.
8              Ms. Law, anything else?
9              MS. LAW:  Yes, Judge, actually
10 several.  This stack of exhibits that's -- I
11 don't know -- an inch thick, which is four or
12 five different exhibits, I got this morning.  I
13 walked into court right before you did, Judge,
14 and I have not even flipped through these, nor
15 would I pretend to be able to make any meaningful
16 use out of them.
17             Number two, this 2012 incident that
18 Mr. Rea is talking about I'm not aware of any
19 sort of Rule 404(b) situation at a detention
20 hearing.  This is unproven conduct that is
21 alleged in a police report that as far as I know
22 has never been charged meaning to me in my
23 experience no prosecuting attorney thought that
24 he had a submissible case.  So I don't know how
25 persuasive that is, Judge.

1          I would also point out that Mr. Rea
2    has talked about presumption of innocence being
3    the starting point.  The presumption of innocence
4    is the start, middle and finish point.  The
5    presumption of release is what the Bail Reform
6    Act is about.
7          And I have to say, Judge, I find it
8    rather offensive that the Government would say
9    that he's been locked up for a couple months, and
10   I don't think he likes it.  Nobody likes being
11   locked up.  That's really not the point, Judge.
12   Your inquiry is not whether or not it would
13   please Mr. Washington to lock him up.  Your
14   inquiry is whether you have gotten to a position
15   where you find that there is no condition or
16   combination of conditions that would reasonably
17   assure that he will show up for court dates and
18   not present a danger to the community.
19         Now, I have to say, Judge, I have
20   heard this argument a thousand times over the
21   years that I've done this that now he has a
22   reason to flee.  This young man, his entire life
23   is in St. Louis, Missouri.  There is no evidence
24   in front of this Court that I'm aware of any
25   exorbitant wealth that he has access to.

```
 1                 He has family that owns houses, but
 2    they live in those houses.  He lives in a house
 3    with Ms. Jones and five children that they care
 4    for.  He is looking for work here.  He has
 5    finished school here.  This is where his family
 6    is.  This is where his life is.
 7                 And finally, Judge, I would point
 8    out that he has pleaded guilty in the state
 9    court.  I don't know what the -- if there is a
10    recommendation for disposition, Your Honor, I
11    don't know what the contemplated disposition is
12    there.
13                 THE COURT:  He's awaiting sentencing
14    on this drug -- on this drug charge; right?
15                 MS. LAW:  I understand that, Judge.
16                 THE COURT:  Right?
17                 MS. LAW:  I understand.
18                 THE COURT:  I just -- I'm not
19    arguing.  I just want to make sure we're clear.
20    He's pled guilty to this?
21                 MS. LAW:  No, I'm very clear about
22    what he's pleaded guilty to, but thank you,
23    Judge.
24                 THE COURT:  I just wasn't.
25                 MS. LAW:  But my point is this.  My
```

1  point is this:  In a recent case I had in this
2  building called United States against Larry
3  Jackson where Mr. Jackson had pleaded guilty and
4  had been locked up on a detention order from day
5  one for six months in front of Judge Jackson I
6  requested a reconsideration and release on bond
7  on the day of his sentencing, and he was granted
8  that.
9            So I think it is disingenuous for
10 the Government to suggest that just because he's
11 pleaded guilty on the very same case in the City
12 means that somehow you don't have the authority
13 or you ought not to release him today.
14           The fact of the matter is, Judge,
15 there is certainly a combination of conditions
16 that this Court could put together that would
17 reasonably assure -- you don't have to guaranty
18 it.  You just have to reasonably assure that
19 Mr. Washington would show up for court
20 appearances and not be a danger to the community.
21           I do not believe there is any
22 conviction which shows that he is a danger to the
23 community.  He pleaded guilty I understand to
24 domestic abuse charges in the City as well, but
25 there were protective orders back and forth

1  between both of those parties.
2              THE COURT:  That's the same person
3  he's going to be living with now?
4              MS. LAW:  No.  No, it's not.
5              THE COURT:  It's a different person?
6              MS. LAW:  No, it's not, Judge.  That
7  lady is Brittany White, I believe.  The lady in
8  the courtroom today is Raquel Jones.  That is an
9  old relationship.  I think this Court is very
10 familiar with the fact that old relationships --
11             THE COURT:  Sure.
12             MS. LAW:  -- often have drama that
13 is not necessarily involved with any real acting
14 out.
15             I don't believe the law enforcement
16 observed this man to hit anybody.  I do not
17 believe that any law enforcement observed this
18 man threatening with a gun to this woman.
19             So I'm just saying he is presumed
20 innocent.  He continues to be presumed innocent.
21 He's not pleaded guilty to anything in this
22 court.  And the fact of the matter is certainly I
23 think that this Court could find a combination of
24 conditions that would be sufficient to assure his
25 appearances.

1     THE COURT: All right. The Court
2  will take all this under submission. All of the
3  exhibits I'm going to file in the court, and I'll
4  file them under seal, because there's things in
5  here that I don't think should be public.
6     MS. LAW: Thank you, Judge.
7     THE COURT: And, again, I'm taking
8  it under submission, but also if I end up denying
9  your motion, if you appealed this order to Judge
10 White, the exhibits will be there, or, if I
11 don't, the prosecutor can do the same.
12    MS. LAW: So all 1A through D and 2
13 I think those are all the exhibits, Judge.
14    THE COURT: Yes. Everything you two
15 just gave me I'll file in the court under seal.
16    MS. LAW: Thank you.
17    THE COURT: And the Court will take
18 the matter of Defendant's bond under submission.
19    MS. LAW: Thank you, Judge.
20    THE COURT: Thank you. Thanks,
21 folks.
22    (PROCEEDINGS CONCLUDED AT 9:46 A.M.)
23
24
25

```
 1                    C E R T I F I C A T E
 2
 3           I, Alison M. Garagnani, Certified
 4   Realtime Reporter, hereby certify that I am a
 5   duly appointed Official Court Reporter of the
 6   United States District Court for the Eastern
 7   District of Missouri.
 8           I further certify that the foregoing is a
 9   true and accurate transcript of the proceedings
10   held in the above-entitled case.  And I further
11   certify that the foregoing pages contain an
12   accurate reproduction from taped proceedings had
13   on that date, transcribed to the best of my
14   ability.
15           I further certify that this transcript
16   contains pages 1 through 17 inclusive and that
17   this reporter takes no responsibility for missing
18   or damaged pages of this transcript when same
19   transcript is copied by any party other than this
20   reporter.
21              Dated Cape Girardeau, Missouri, this
22   6th day of May, 2015.
23
24   ------------------------------------------
     /s/Alison M. Garagnani
25   Alison M. Garagnani, CCR, CSR, RMR, CRR
     Official Court Reporter
```

17